WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Melinda Ann Elem,

               Petitioner,

v.

Charles L. Ryan, et. al.,

               Respondents.

No. CV-09-00664-TUC-FRZ

**ORDER**

Melinda Ann Elem ("Petitioner"), presently an inmate at the Arizona State Prison Complex in Goodyear, Arizona, has filed an Amended Petition for Writ of Habeas Corpus ("Amended Petition") pursuant to 28 U.S.C. § 2254. (Doc. 4).  The matter is now fully briefed.  For the following reasons, the Court will dismiss in part and deny in part Petitioner's Amended Petition.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Trial

Petitioner sought to hire a person to kill the unborn child of her husband's former girlfriend, Ms. Margaret Cisco, who was uncertain whether the father of her baby was Petitioner's husband or some other man. (Answer, (Docs. 12, 13), Exh. H, pp. 2-3). The person Petitioner attempted to hire was an undercover officer whom she agreed to give "[]a quarter of [an] ounce of drugs[] and a bus ticket in exchange for the killing." (Answer, Exh. H, p. 2). On April 22, 2004, a jury found Petitioner guilty as charged of

one count conspiracy to commit first-degree murder and aggravated assault upon Margaret Cisco and to commit manslaughter of Margaret Cisco's unborn child, a class 1 felony (Count 1), and one count transfer of a narcotic drug (cocaine), a class 2 felony (Count 2).(Answer, Exh. E, pp. 60-62; Answer, Exh. H, p.3). Petitioner was sentenced to concurrent terms of life imprisonment with no possibility of release for 25 years of imprisonment on Count 1 and 3 years of imprisonment on Count 2. (Answer, Exh. F, pp. 83-84).

### B. Direct Review

Petitioner appealed her convictions to the Arizona Court of Appeals. (Answer, Exhs. G, H). On August 29, 2005, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Answer, Exh. H, p. 2). Petitioner filed a Petition for Review with the Arizona Supreme Court which was denied on May 23, 2006. (Answer, Exh. I, p. 20; Answer Exh. J, p.50).

### C. Collateral Review

On June 20, 2006, Petitioner filed a Notice of Post-Conviction Relief. (Answer, Exh. K, p. 52).Petitioner filed her Petition for Post-Conviction Relief ("PCR Petition") on March 7, 2007. (Answer, Exh. L). The trial court denied Petitioner's PCR Petition on June 11, 2007. (Answer, Exh. M). Petitioner then filed a petition for review with the Arizona Court of Appeals and the appellate court granted review but denied relief. (Answer, Exhs. N, O). On October 29, 2008, the Arizona Supreme Court summarily denied the petition for further review. (Answer, Exh. Q). The mandate issued on December 16, 2008.[1]

### D. Federal Habeas Petition

In accordance with the prison "mailbox rule," Petitioner's federal habeas petition is deemed filed on November 2, 2009, when Petitioner delivered it to prison authorities for mailing to the court. *Houston v. Lack*, 487 U.S. 266, 276 (1988).  After screening the

---

[1] The parties did not provide this Court with proof of the mandate. This mandate is available as a public record on the Arizona Court of Appeals Division Two website. *See* http://www.apltwo.ct.state.az.us/ODSPlus/caseInfolast.cfm?caseID=119115.

Petition, the Court dismissed it without prejudice with leave to refile. (Doc. 3). Thereafter, Petitioner filed an Amended Petition raising four grounds for relief, and this Court ordered Respondents to answer it. (Docs. 4, 5).

In their Answer, Respondents argue the Habeas Petition is untimely, Grounds One and Three are procedurally defaulted, and all four claims fail on the merits. (Doc. 12). In Reply, Petitioner argues that her Petition is timely filed. (Doc. 17). Although Petitioner withdraws claim 3 (*Id.* at p. 2), she contends that her other claims are properly before the Court and she is entitled to relief.  (*Id.* at pp. 3-6, 16-36).

## II. DISCUSSION

### A. Statute of Limitations

Petitioner commenced this action on November 2, 2009.  The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations for state prisoners filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). The statute of limitations begins to run from the latest of: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States was removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Additionally, the AEDPA limitations period is statutorily tolled when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending…."  28 U.S.C. § 2244(d)(2).  Moreover, the AEDPA limitations period may also be subject to equitable tolling. *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009).

Petitioner's case became "final" on direct review on August 23, 2006, when the time for filing a petition for writ of *certiorari* to the United States Supreme Court expired. *See Bowen v. Roe,* 188 F.3d 1157, 1158-69 (9th Cir. 1999). Before her conviction became final on direct review, Petitioner filed her Notice of Post-Conviction Relief on June 20, 2006. Therefore, when the statute of limitations began to run pursuant to § 2244(d)(1)(A), it was automatically tolled by Plaintiff's PCR action. *See* 28 U.S.C. § 2254(d)(2); *Isley v. Arizona Dep't of Corr.*, 383 F.3d 1054, 1056 (9th Cir.2004) (filing of a notice of post-conviction relief begins statutory tolling).

During Petitioner's PCR proceeding, the trial court denied Petitioner's PCR Petition, the Arizona Court of Appeals granted review but denied relief, and on October 29, 2008, the Arizona Supreme Court entered its summary denial of Petitioner's Petition for Review. (Answer, Exhs. M, O, Q; *see also* Answer, Exh. P (appellate court order granting in part and denying in part Petitioner's motion for reconsideration)). On December 16, 2008, the Arizona Court of Appeals issued the mandate. *See* Ariz.R.Crim.P. 31.23(a)(3) (the clerk of the Court of Appeals shall issue the mandate 15 days after receipt of an order of the Supreme Court denying the petition for review).

Respondents contend that the statutory tolling period ended on October 29, 2008 when the Arizona Supreme Court denied review of the Arizona Court of Appeals' decision in the PCR proceeding. (Answer, p. 15). According to Respondents, Petitioner then had until October 29, 2009 to seek federal habeas relief. (*Id*). Petitioner counters that her federal petition is timely filed because the statutory tolling period did not end until the Arizona Court of Appeals issued the mandate on December 16, 2008.

Until an application for state post-conviction relief has achieved final resolution through the state's post-conviction procedure it remains pending. *Carey v. Saffold,* 536 U.S. 214, 220 (2002). State law determines the conclusion of collateral review and thus, state law also determines the conclusion of statutory tolling under the AEDPA. *See Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir.2007). "In Arizona, when the court of appeals grants review of a petition, but denies the petition, direct review is not final

until the mandate has issued." *Ramon v. Ryan,* 2010 WL 3564819, *6 (D. Ariz. July 23, 2010) (*citing* Ariz.R.Crim.P. 31.23(a)[1]). *See also Celaya v. Stewart,* 691 F.Supp.2d 1046, 1055, 1055, 1074-1075, (D.Ariz. 2010) (adopting magistrate judge's conclusion that PCR petition "was pending, as the Supreme Court defined that term in *Carey*, until it reached final resolution upon issuance of the court of appeals mandate....", and holding "under Arizona law, the Petitioner is entitled to statutory tolling because an Arizona appellate court decision is not final until the mandate issues")(collecting cases holding that conviction becomes final on date either the appellate court or  state supreme court issues the mandate), *aff'd* 497 Fed Appx. 744, 2012 WL 5505735, *1 (9th Cir. 2012); *see also Celaya, 497 Fed.Appx.* 744, 745, 2012 WL 5505736 at *1 ("Under Arizona law, [petitioner's] post-conviction review...petition was 'pending' until the Arizona Court of Appeals issued the mandate concluding its review of that petition....")).

Arizona Rules of Criminal Procedure provide, in pertinent part, that in cases where the petitioner seeks review of the appellate court's decision, the appellate court "shall not issue a mandate until 5 days after the receipt" of an order denying review. Ariz.R.Crim.P. 31.21(a)(3). *See also* A.R.S. § 12-120.24 ("upon receipt from the clerk of the supreme court of notification that the request for review has been denied, the clerk of the division [of the appellate court] shall, if the matter has been decided by formal opinion, issue the mandate of the court of appeals, if no written formal opinion has been rendered then by certified copy of the order of the court."). Further, in a case where the appellate court had issued a memorandum opinion, the Arizona Supreme Court has explained that "[i]f this court denies the petition and cross petition for review, the Court of Appeals issues the mandate to the trial court....This procedure comports with the notion that the court which makes the binding decision should issue the mandate." *State*

---

[1]Under Ariz.R.Crim.P. 31.23(a)(1):

> [i]f there has been no motion for reconsideration and no petition for review filed, the clerk of the Court of Appeals shall issue the mandate at the expiration of the time for the filing of such motion or petition.

*v. Ikirt,* 160 Ariz. 113, 770 P.2d 1159 (1989) (*citing* Ariz.R.Crim.P. 31.19(h)); *see also Borrow v. El Dorado Lodge, Inc.,* 75 Ariz. 218, 254 P.2d 1027, 220, 1028-29 (1953) (an appellate court's decision becomes effective "under our practice, [on] the date of issuance of…the mandate") (citation omitted).

Respondents' reliance on Ninth Circuit cases construing Washington and Guam law is inapposite given that the Ninth Circuit did not construe Arizona law in those cases. (*See* Answer, p. 15 (*citing White v. Klitzkie,* 281 F.3d 920, 923 n.4 (9th Cir. 2002); *Wixom v. Washington,* 264 F.3d 894, 897-98 & n.4 (9th Cir. 2001)).  Additionally, Respondents' reliance on the Ninth Circuit's decision in *Hemmerle* is also misplaced given that *Hemmerle* did not involve a situation where, like the instant case, the appellate court granted review but denied relief in the post-conviction proceeding.  Instead, *Hemmerle,* in pertinent part, addressed whether a letter issued from the clerk of the court of appeals facilitating the performance of the ministerial function of returning the record to the trial court after the Arizona Supreme Court's denial of review factored into the tolling period under section 2244(d)(2).  *Hemmerle,* 495 F.3d at 1077.  In deciding that the post-conviction proceeding was not pending for purposes of AEDPA's tolling provision when the letter issued, the *Hemmerle* court pointed out that the letter was not a mandate, nor was it the equivalent to the issuance of a mandate.  *Id.*  On the instant facts, the AEDPA statute of limitations was tolled until December 16, 2008 when the mandate issued in the post-conviction relief proceedings.  *See Celaya,* 691 F.Supp.2d at 1055, 1074-1075; *Ramon,* 2010 WL 3564819, at *6.  Petitioner had one year from that date to file her federal habeas petition. Petitioner's federal habeas action commenced on November 2, 2009 is timely filed under the AEDPA.

**B.      Petitioner's Grounds for Relief**

**1.      Standard of Review**

Under the AEDPA, the Court may grant a writ of habeas corpus only if the state court proceeding:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333 (2006).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test. *See Cordova v. Baca,* 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, "[a] state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton,* 544 U.S. 133, 141(2005). "Whether a state court's interpretation of federal law is contrary to Supreme Court authority...is a question of federal law as to which [the federal courts]...owe no deference to the state courts." *Cordova*, 346 F.3d at 929.

Under the second test, "[a] state-court decision involves an unreasonable application of [the Supreme Court's] clearly established precedents if the state court applies [the Court's] precedents to the facts in an objectively unreasonable manner." *Brown,* 544 U.S. at 141. When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law...." *Cordova,* 346 F.3d at 929.

Further, a federal habeas court can only look to the record before the state court in

reviewing a state court decision under section 2254(d)(1). *Cullen v. Pinholster*, __ U.S. at __, 131 S.Ct. 1388, 1400 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before that state court.")(footnote omitted); *Holland v. Jackson*, 542 U.S. 649, 652 (2004)("[W]e have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it.")(citations omitted).

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004)("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."). In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues...[M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (*quoting Taylor,* 366 F.3d at 1000)(emphasis in original).

Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, i.e., evidence presented for the first time in federal court." *Taylor*, 366 F.3d at 1000: see also 28 U.S.C. §2254(c). Factual and credibility determinations by either state trial or appellate courts are imbued with a presumption of correctness. 28 U.S.C. §2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002); *Bragg v. Galaza*, 242 F.3d 1082, 1078 (9th Cir. 2001), *amended*

253 F.3d 1150 (9th Cir. 2001).

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact. Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under section 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1)." *Lambert,* 393 F.3d at 978.

### 2.   Ground One

Petitioner asserts that the trial court violated her Fourteenth Amendment right to due process when it failed to instruct jurors regarding: "specific intent"; that a dual state of mind is required for manslaughter of an unborn child; mere acquiescence is not enough to establish conspiracy; and that an overt act is required for conspiracy to commit manslaughter of an unborn child.   Respondents contend that Petitioner's claim is procedurally defaulted because she did not fairly present a federal issue to the state court but, instead, only focused on state law.  (Answer, p. 20).

### a.   Exhaustion

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court...thereby alerting that court to the federal nature of the claim."   *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotations omitted). A petitioner fairly presents a claim to the state court by describing the factual or legal bases for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting claims under the United States Constitution." *Duncan v. Henry,* 513 U.S. 364, 365-366 (1995).  "In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." *Fields v. Waddington,* 401 F.3d 1018, 1020 (9th Cir. 2005); *see also Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000), *amended*, 247 F.3d 904 (9th Cir. 2001) (to exhaust state remedies, "the petitioner must have either referenced specific provisions of the federal constitution or statutes or federal case law.").

1    On direct appeal, Petitioner identified the instances where she claimed the trial
2  court's errors in instructing the jury resulted in permitting the jury to convict her absent
3  proof of an element of the charged offense. As to each challenge, Petitioner cited state
4  cases to support her theory regarding the elements necessary for conviction under
5  Arizona law.  Petitioner concluded her first challenge to the jury instructions with the
6  argument that the failure to establish the element at issue resulted in failure to prove her
7  guilt beyond a reasonable doubt, which constituted "a violation of due process of law.  5th
8  and 14th Amendments to the U.S. Constitution; *see In Re Winship,* 397 U.S. 358 (1970)."
9  (Answer, Exh. G, pp. 21-22).   Thereafter, she concluded other sections of her brief
10  challenging other jury instructions by including citation to the  5th and 14th Amendments
11  and *In re Winship*.  (*See id.*  at pp. 23-24 (arguing that the trial court's error in instructing
12  the jury "resulted in a verdict of guilt unsupported by a finding that the mens rea elements
13  of the offense were proven beyond a reasonable doubt.  5th, 6th, 14th Ams. U.S. Const.; *In*
14  *re Winship, supra.*"); *id.* at p.25 (arguing failure to instruct about element of overt act "is
15  fundamental error….The conviction is unconstitutional.  5th, 6th, 14th Ams. U.S. Const,; *In*
16  *re Winship, supra.*")).

17    "It is well established that the Due Process Clause requires the prosecution to
18  prove beyond a reasonable doubt 'every fact necessary to constitute the crime with which
19  [the defendant] is charged.'"  *Conde v. Henry,* 198 F.3d. 734, 740 (9th Cir. 1999) (*quoting*
20  *In re Winship,* 397 U.S. at 364).  Therefore, when "a trial court fails 'to properly instruct
21  the jury regarding an element of the charged crime,' the court commits 'a constitutional
22  error that deprives the defendant of due process.'"  *Id.* (*quoting Hennessy v. Goldsmith,*
23  929 F.2d 511, 514 (9th Cir. 1991)).  "This is not an instance where the…petitioner failed
24  to 'apprise the state court of [her] claim that the…ruling of which [s]he complained was
25  not only a violation of state law, but denied [her] the due process of law guaranteed by
26  the Fourteenth Amendment.'"  *Dye v. Hofbauer,* 546 U.S. 1, 4 (2005) (*quoting Duncan,*
27  513 U.S. at 366).  Nor is this a case where the state appellate court had to look beyond the
28  brief "to be aware of the federal claim."  *Id.* (*quoting Baldwin,* 541 U.S. at 32).  Instead,

1    Petitioner's state-court brief was clear that her claims regarding the jury instructions were

2    "based, at least in part, on a federal right."  *Id.*  Petitioner has fairly exhausted these

3    claims.

4                        **b.  Merits: Introduction**

5            Because the Arizona Supreme Court summarily denied review of Petitioner's

6    petition for review of the appellate court's opinion on direct review, the appellate court's

7    opinion is the last reasoned state-court decision on Petitioner's jury instruction

8    challenges.  *See Ylst v. Nunnemaker,* 501 U.S. 797, 806 (1991).  The Arizona appellate

9    court's decision rejected Petitioner's challenges regarding jury instructions under state

10   law, but never specifically acknowledged her federal due process argument.  Where, the

11   state court rejects "a federal claim without expressly addressing that claim, a federal

12   habeas court must presume that the federal claim was adjudicated on the merits" for

13   AEDPA purposes.  *Johnson v. Williams,* __ U.S. __, 133 S.Ct. 1088, 1096 (2013);

14   *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784-785 (2011).  Although the

15   petitioner may overcome this presumption in some circumstances, *see Johnson,* __ U.S.

16   __, 133 S.Ct. at 1098-99; *Harrington,* __ U.S. __, 131 S.Ct. at 785, Petitioner has not

17   done so here.  The conclusion that the presumption has not been rebutted in this case is

18   supported by the fact that the appellate court's determination that the trial court's

19   instructions did not violate state law would necessarily lead to the conclusion that no

20   federal due process violation occurred.

21           With regard to jury instructions, Petitioner challenges the trial court's: (1) refusal

22   to give her proffered instruction on specific intent; (2) failure to *sua sponte* instruct on

23   mere acquiescence; (3) failure to *sua sponte* instruct the jury that two states of mind are

24   required for manslaughter of an unborn child; and (4) failure to *sua sponte* instruct that

25   jury that conspiracy to commit manslaughter of an unborn child required proof of an

26   overt act.  (Amended Petition, pp. 6, 12-15).  According to Petitioner, the trial court's

27   failure to give the instructions resulted in omitting elements of the offense charged from

28   the jury instructions which, in turn, permitted the jury to reach a guilty verdict on

1   elements not found beyond a reasonable doubt in violation of due process. (Reply, p. 18).

2       The Supreme Court has made clear that, "[i]n a criminal trial, the State must prove

3   every element of the offense, and a jury instruction violates due process if it fails to give

4   effect to that requirement." *Middleton v. McNeil,* 541 U.S. 433, 437 (*citing Sandstrom v.*

5   *Montana*, 442 U.S. 510, 520–521 (1979)).  Therefore, "[i]t is a violation of due process

6   for a jury instruction to omit an element of the crime." *Evanchyk v. Stewart,* 340 F.3d

7   933, 940 (9th Cir. 2003) (*citing United States v. Gaudin,* 515 U.S. 506, 509-10 (1995);

8   *Osborne v. Ohio*, 495 U.S. 103, 122-24 & n. 17 (1990); *Sandstrom*, 442 U.S. at 524; *In re*

9   *Winship*, 397 U.S. at 364; *Ho v. Carey*, 332 F.3d 587, 595 (9th Cir.2003); *United States*

10  *v. Mendoza*, 11 F.3d 126, 128 (9th Cir.1993)). However, "not every ambiguity,

11  inconsistency, or deficiency in a jury instruction rises to the level of a due process

12  violation." *Middleton*, 541 U.S. at 437. The question is "'whether the ailing instruction by

13  itself so infected the entire trial that the resulting conviction violates due process.'"

14  *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141,

15  147 (1973)). In making this determination, the court must be mindful that "'a single

16  instruction to a jury may not be judged in artificial isolation, but must be viewed in the

17  context of the overall charge.'" *Boyde v. California,* 494 U.S. 370, 378 (1990) (*quoting*

18  *Cupp*, 414 U.S. at 146–147).

19      Likewise, the state trial court's refusal to give an instruction does not alone raise a

20  cognizable ground in federal habeas corpus proceedings. *See Dunckhurst v. Deeds*, 859

21  F.2d 110, 114 (9th Cir. 1988).  Instead, the error must so infect the trial that the petitioner

22  was deprived of her right to a fair trial guaranteed by the due process clause of the

23  Fourteenth amendment. *Id. See also Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

24  Moreover, when the petitioner's claim is based on the omission of an instruction, she

25  bears an "especially heavy…" burden, because an omission is less likely to be prejudicial

26  than a misstatement of the law. *Henderson,* 431 U.S. at 155.  "The significance of the

27  omission of such an instruction may be evaluated by comparison with the instructions

28  that were given." *Murtishaw v. Woodford,* 255 F.3d 926, 971 (9th Cir. 2001) (*quoting*

- 12 -

*Henderson,* 431 U.S. at 156).

### **(1) Specific intent**

Petitioner proffered, and the trial court rejected, the following instructions:

> SPECIFIC INTENT
> Where specific intent is essential to a crime, such an intent cannot be presumed from the mere commission of the act, it must be expressly proved.
> CONSPIRACY TO COMMIT FIRST DEGREE MURDER
> Conspiracy to commit First Degree Murder is a specific intent crime. The state must prove as elements that Ms. Elem intended to kill [Margaret Cisco] and entered into an agreement with a conspirator to commit the crime of murder.
> CONSPIRACY
> The crime of Conspiracy requires both that a person have an intent to promote or aid commission of a specific offense and that she agrees with another person that the offense be committed.
> CONPSIRARCY TO COMMIT FIRST DEGREE MURDER
> The intent and agreement to kill must be proven to convict of Conspiracy to Commit First Degree Murder.

(Answer, Exh. H. p, 5).

The trial court instead instructed the jury that the crime of conspiracy required proof of the following:

> 1. The defendant agreed with one or more persons that one of them or another person would engage in certain conduct; and
> 2. The defendant intended to promote or assist the commission of a crime;
> 3. That the intended conduct would constitute a crime whether known or unknown by the defendant to be a crime.
> "Intentionally" or "with the intent to" means that a person's objective is to cause that result or to engage in that conduct.

(*Id*. at p. 4).  The jury was instructed on first degree murder as follows:

The crime of first-degree murder requires proof of the following three things:

> 1.     The defendant caused the death of another person; and
> 2.     The defendant intended or knew that he or she would cause the death

of another person; and

3.    The defendant acted with premeditation.

* * *

"Knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense that a person is aware of or believes that his or her conduct is of that nature or that the circumstance exists.  It does not require any knowledge of the unlawfulness of the act or omission.

(*Id.* at p.4).

Petitioner argued on appeal that the trial court's refusal to give her proffered instructions permitted the jury to convict her of conspiracy to commit first-degree murder based on a lesser mental state, such as mere foreseeability, than what the applicable statutes require.  (*Id.* at p.5).  In rejecting Petitioner's claim, the appellate court pointed out that "Arizona does not recognized the distinction between general intent and specific intent but instead uses the four culpable mental states that include intent, knowledge, recklessness, and criminal negligence.  *See State v. Bridgeforth,* 156 Ariz. 60, 602, 750 P.2d 3, 5 (1988) ('The four culpable mental states are the only terms used by the Criminal Code and replace all previous mental states used in our criminal laws.)"  (*Id.* at p. 6 (other citations omitted)).   The appellate court held that Petitioner's requested instructions requiring "specific intent" did not accurately reflect state law and were properly rejected.  (*Id.*).  The Court found "nothing in the record to indicate that the jurors in Elem's case could have been confused by the instructions that were given....And based on the instructions the court gave, we reject Elem's speculative argument that 'it is…probable…that the jury found [her] guilty of conspiracy to commit first degree murder based on mere foreseeability of death.'  The instructions given contained no such language and communicated no such concept."  (*Id.* at p. 7).  The court also pointed out that Petitioner's third and fourth requested instructions contained "the identical components of conspiracy—intent to promote or aid a crime and an agreement toward that end—as the elements in the instructions the court actually provided.  Because these requested instructions were adequately covered by other instructions given to the jury, the trial court was not required to give those instructions Elem had proffered."  (*Id.*).

- 14 -

Petitioner argues that based on the instructions given:

> it is possible, if not probable that the jury found Petitioner guilty of conspiracy to commit first degree murder based on mere foreseeability of death, acquiescence in the likelihood that death would occur, or even actual knowledge.   None of those mental states was sufficient to satisfy the specific intent element of the crime of conspiracy. Therefore, the court cannot say that "beyond a reasonable doubt," Petitioner's specific objective was to cause the death of Margaret Cisco and that her death was the specific objective of the agreement between Petitioner and the Detective.

 (Amended Petition, p. 13).  Therefore, Petitioner argues that the trial court violated her Fourteenth Amendment right to due process when it refused to give her proffered instructions on specific intent. (*Id.* at p.6; Reply, pp. 18-26)

To the extent that Petitioner challenges the appellate court's holding that her proffered instruction on specific intent did not accurately reflect Arizona law, this Court is bound by the state court's interpretation of state law. *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Moreover, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67-68 ("the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); *see also   Gilmore v. Taylor,* 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to a federal constitutional error.  To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief.").

Under Arizona's conspiracy statute, in pertinent part,:

> A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense....

A.R.S. §13-1003(A).

Here, the trial court, after defining the elements of conspiracy and the underlying crimes, including first-degree murder, further cautioned the jurors:

> In order to find the defendant guilty of the crime of conspiracy, the jury must also determine which crime or crimes the defendant conspired to commit. The State must prove the defendant conspired to commit the crime or crimes beyond a reasonable doubt. You may determine that the defendant conspired to commit all or only some of the crimes listed on the verdict form. Your decision on which crime or crimes the defendant conspired to commit must be unanimous. If you are unable to agree unanimously as to what crime or crimes the defendant conspired to commit, you must leave the verdict form blank.

(Answer, Exh. E, p. 36).

The challenged instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle,* 502 U.S. at 72 (*quoting Cupp,* 414 U.S. at 147.). Petitioner's jury was instructed on the elements of conspiracy to commit first-degree murder, including the requirement that the defendant agreed with at least one other person that one of them or another would engage in certain conduct, such *intended conduct would constitute a crime*, i.e., defendant's objective was to cause that result or engage in that conduct. In sum, to find Petitioner guilty, the jury instructions required the jury to find, *inter alia,* that Petitioner had intent to cause the death of Ms. Cisco and an agreement to cause the death of Ms. Cisco. The jury instructions further required the jury to indicate which crime or crimes they found Petitioner had conspired to commit, i.e. had intent to commit. The instructions as a whole support the conclusion that the jury was instructed on the precise elements, including the necessary intent, of conspiracy to commit first-degree murder of Ms. Cisco. Thus, the state was required to prove every element of the offense as the Due Process Clause requires. Moreover, the record supports the jury's finding given Petitioner's conversations with undercover Detective Fontes concerning Ms. Cisco's fate:

Elem reiterated to Fontes that she "just want[s] to have the baby out of the picture and…if something has to happen to [Ms. Cisco] it wouldn't be all that bad either."  Fontes replied that "probably what's going to happen" is that both the baby and [Ms. Cisco] would be killed and clarified that [Ms. Cisco] "absolutely…[is] going to go to[o] you know," to which Elem responded, "Yeah…That's fine with me.  I mean that's fine with me." …[When Petitioner met with Fontes to give him directions to Ms. Cisco's home,] Fontes repeated, "The baby and her is okay[?]" and Elem replied, "Yeah that's fine."

(Answer, Exh. H, pp. 2-3).

Consideration of the jury instructions alone, as a whole, and in the context of the trial record, supports the state court's conclusion that no due process violation occurred. The state court decision was neither contrary to, nor an unreasonable application of, clearly established federal law.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented.

### (2) Dual States of Mind

Petitioner argues that her right to due process was violated because the jury instructions "did not show…that there are two mental states for manslaughter of an unborn child."  (Amended Petition, p. 6).

On direct appeal Petitioner argued that the trial court failed to instruct the jury that in order to find her guilty of conspiracy of manslaughter of an unborn child, Petitioner "must also have specifically intended and specifically agreed to cause the death of an unborn child."  (Answer, Exh. G, p. 23).  Petitioner also argued that the trial court failed to instruct the jury that she "must also have specifically intended and agreed to cause physical injury to the mother that was intended to cause her death…The failure to give that instruction was error because the jury could have improperly reasoned that merely knowing that death would occur was sufficient because they were instructed that first degree murder could be based on mere knowledge."  (*Id.* at p. 23).

The appellate court rejected Petitioner's claim as follows:

Here, the court's instructions communicated, in essence, that in order to

1
2
3
4
5
6
7
8
9
10

find Elem guilty of conspiracy to commit manslaughter, the jury must determine that Elem had agreed with another person that one of them would engage in the killing of [Ms. Cisco's] unborn child, and that Elem had intended that [Ms. Cisco's] unborn child be killed.  It was also instructed, as to first-degree murder, that it must find that Elem "intended or knew" that [Ms. Cisco's] death would result.  That the substantive offenses of manslaughter of an unborn child and first-degree murder contain lesser mental states than that required for the preparatory offense—conspiracy— neither negates nor transforms the requisite mental states for those underlying offenses, and does not nullify the requirement that the jury find the heightened "intentional" mental state for conspiracy….The jury was properly instructed.

(Answer, Exh. H, p. 10).

11
12
13
14
15
16
17
18
19

There is no question that the jury instructions given in this case as a whole instructed on the precise elements required, including the necessary intent for conspiracy. "A jury is presumed to follow its instructions."  *Weeks v. Angelone,* 528 U.S. 225, 234 (2000) (*citing Richardson v. Marsh,* 481 U.S. 200, 211 (1987)).   As Respondents point out, "[t]he evidence establishing that Petitioner specifically intended to kill both [Ms.]…Cisco and her unborn child…came largely from Petitioner's own mouth." (Answer, p. 26; *see also* Answer, Exh. H, pp.2-3).  Consideration of the overall charge to the jury in the context of the trial record in this case supports the conclusion that the state was required to prove every element of the offense as the Due Process Clause requires.

20
21
22

The state court decision on this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented.

23

### (3) Mere Acquiescence

24
25
26
27
28

The appellate court also rejected Petitioner's argument that the trial court erred by failing to *sua sponte* instruct the jury that "mere acquiescence or knowledge without agreement does not establish a conspiracy."  (*Id.* at pp. 7-8).  The appellate court stated "the concept of a defendant's intent to engage in a conspiracy was adequately covered by the instructions the court gave on the elements of conspiracy and on the requisite intent

for forming that conspiracy." (*Id.* at p.8).  The court also pointed out that the instruction correctly stated the law. (*Id.*)

Petitioner, who is represented by counsel, has cited no Supreme Court case holding that the trial court must *sua sponte* instruct the jury in a conspiracy case that mere acquiescence or knowledge without agreement does not establish a conspiracy. Nor is this Court aware of any such authority.  Further, the conspiracy instruction given in this case specifically required proof that "[t]he defendant agreed with one or more persons that one of them or another person would engage in certain conduct…."  (Answer, Exh. E, p. 34; *see also* Answer, Exh. H, p.4).  The jury is presumed to follow its instructions. *Weeks,* 528 U.S. at 234.  Because the jurors were instructed that an agreement was required as an element of conspiracy, an instruction on mere acquiescence or knowledge was superfluous.  Further, the instructions that were given in no way precluded Petitioner from arguing that there had been no agreement to kill Ms. Cisco, but instead Petitioner merely acquiesced on this point.  The failure to *sua sponte* instruct the jury in no way alleviated the state of its burden to prove every fact necessary to constitute the offense. The instructions that were given did not relieve the state of its burden of proving every element of the offense.

The state court decision on this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented.

### (4) Overt act

Petitioner argues that the trial court's failure to *sua sponte* instruct the jury that conspiracy to commit manslaughter of an unborn child required proof of an overt act rendered her conviction unconstitutional.  (Amended Petition, p. 15).

The crime of conspiracy under Arizona law requires the commission of an overt act in furtherance of the underlying offense unless the object of the conspiracy was to commit any felony upon the person of another.  A.R.S. § 13-1003(A).  Under the relevant provision, manslaughter is committed by knowingly or recklessly causing the death of an

unborn child by any physical injury to the mother.  A.R.S. § 13-1103(A)(5).[2]

On the first day of trial, when counsel for the prosecution and the defense discussed instructions for the elements for conspiracy, the court asked whether the parties objected to "removing the element of an act in furtherance of the conspiracy."  (Answer, Exh. B, p. 4).  Defense counsel

> object[ed]…but…with the caveat it's a correct recitation of the law as it stands, but I believe at this time it's impermissible.  It's overt, out of the statute, simply because it is against a person….I believe that it literally takes away elements that will lead to cruel and unusual punishment. Literally you could be talking or thinking out loud and be convicted of conspiracy under [sic] the state of Arizona. I believe the statute as written violates the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the constitution.

(*Id.*).

When discussing jury instructions at the close of trial, the court stated to defense counsel:  "You wanted it out.  'Overt act' is out.  Show I deleted it by stipulation." (Answer, Exh. E, p.5).  Before moving on, the trial court clarified: "is that an agreement, we don't have an overt act, it's out?" to which the prosecutor agreed and defense counsel did not object, but instead raised an objection to a different instruction.  (*Id.* at pp. 5-6).

On direct appeal, Petitioner argued, as she does here, that under Arizona law, an unborn child is not a person and, thus, the crime of conspiracy to commit manslaughter of an unborn child must have as one if its elements the commission of an overt act in furtherance of the conspiracy.  According to Petitioner, the trial court's failure to *sua sponte* instruct the jury "conspiracy to commit manslaughter of an unborn child required proof of an overt act" rendered her conviction unconstitutional under *Winship*.  (Answer, Exh. G, p. 25).

The appellate court noted that Petitioner's objection at the beginning of trial to the

---

[2] Respondents point out that the offense of manslaughter of an unborn child necessarily required the commission of aggravated assault upon the mother of an unborn child to kill the fetus.  (Answer, p. 25 n.11 (*citing* A.R.S. § 13-105(11),(12); A.R.S. § 13-1204(A)(1),(2) (2004)).

omission of overt act as an element of conspiracy "as best we can discern, 'cruel and unusual punishment'—was based on a different ground than the objection she raises on appeal, i.e., that an 'unborn child' does not meet the statutory definition of a 'person.' *See State v. Barraza,* 209 Ariz. 441, 104 P.3d 172 (App. 2005) (objection on one ground does not preserve objection based on different ground later asserted on appeal)."  (Answer, Exh. H, p. 11).  The court pointed out that "[d]uring the final settling of jury instructions, the [trial] court stated that it had deleted the 'overt act' language 'by stipulation,' and Elem did not object."  (*id.*). The court held that Petitioner's acquiescence in deleting the language resulted in a waiver of such argument on appeal.  (*Id.* (*citing State v. Rivera,* 152 Ariz. 507, 733 P.2d 1009 (1987); *State v. Logan,* 200 Ariz. 564, 30 P.3d 631 (2001) (reviewing court does not consider whether alleged error is fundamental when party complaining of error invited it)).   Therefore, the appellate court refused to address Petitioner's challenge.  (*Id.*).

Respondents contend that the issue is precluded from federal habeas review because the state court decision was premised on an independent and adequate state law ground.  (Answer, p. 25).

Rule 21.3 of the Arizona Rules of Criminal Procedure require contemporaneous objections to jury instructions.  Ariz.R.Crim.P. 21.3(c).  "Failure to comply with Rule 21.3 is adequate under Arizona law to bar consideration of an objection unless it rises to the level of fundamental error." *Sturgis v. Goldsmith,* 796 F.2d 1103, (9th Cir. 1986) (*citing State v. Grilz,* 136 Ariz. 450, 666 P.2d 1059, 1063 (1983)).  Moreover, under Arizona law, when a party invites error, that party waives the right to challenge same on appeal.  *See Branham v. Gay,* 2011 WL 5882558, *4 (D.Ariz. 2011) (*citing Logan,* 200 Ariz. at 565, 30 P.3d at 632).  "The invited error doctrine is an adequate and independent state procedural rule upon which the Arizona Court of Appeals relied to reject Petitioner's challenge." *Id.*  "Under *Wainwright v. Sykes,* 433 U.S. 72, 87…(1977), such a procedural default in state court precludes litigation of the alleged error in federal court unless the petitioner can demonstrate 'cause' for his failure to raise the question at state

trial, and 'prejudice' from the error." *Sturgis,* 796 F.2d at 1106.  The court may also consider a defaulted claim if the petitioner demonstrates a fundamental miscarriage of justice would result. *Schlup v. Delo,* 513 U.S. 298, 321 (1995).  To fall within the narrow class of cases that implicates a fundamental miscarriage of justice, the petitioner must present newly discovered evidence showing "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327.  *See also Bousley v. United States*, 523 U.S. 614, 623 (1998) ("actual innocence means factual innocence, not mere legal insufficiency.").  Petitioner has not shown "cause and prejudice" or "a fundamental miscarriage of justice" to excuse her procedural default on this issue.

Because Petitioner has procedurally defaulted this claim, she is not entitled to federal habeas review.

### 3.  Ground II

Petitioner argues that her "conviction for conspiracy to commit manslaughter is invalid because the offense of manslaughter of an unborn child is unconstitutionally vague…" in violation of the Fourteenth Amendment which requires that a statute be sufficiently clear.  (Amended Petition, p. 7).  According to Petitioner, the Arizona legislature has not defined the term "child" within the criminal code.  (*Id.*) Elsewhere, "child" is defined as "persons under the age of eighteen years" and "person" is defined as a "human being."  (*Id.*).  Petitioner contends that "under Arizona law, a fetus, or unborn child, is not a person", thus, the statute is "open to individual definitions based on significant philosophical and religious perspectives" regarding when life begins. (*Id.* at pp. 7, 16).  "Consequently, the statutory term 'unborn child' is inherently vague."  (*Id.* at p. 16).

On direct appeal, the appellate court rejected Petitioner's claim for lack of standing because the

> "core of the statute" under which she was convicted "clearly proscribe[s]" her conduct in conspiring to have [Ms. Cisco's] unborn child killed.  *See*

- 22 -

> *State v. Tocco,* 156 Ariz. 116, 750 P.2d 874 (1988) (one whose conduct is clearly proscribed by particular statute may not challenge it on constitutional vagueness grounds).   Section 13-1103(A)(5) proscribes causing the death of an unborn child at any stage of its development. Elem's agreement with [Detective] Fontes that he would kill [Miss. Cisco's] unborn child constituted conspiracy to cause the death of that unborn child.   *See also* §13-1003 (conspiracy requires intent to promote commission of offense and agreement that one person will engage in conduct constituting that offense).

(Answer, Exh. H, pp. 12-13).

The Supreme Court has been clear that a defendant whose conduct is clearly proscribed by the core of a statute does not have standing to attack it on the basis that it is unconstitutionally vague.  *Parker v. Levy,* 417 U.S. 733, 756 (1982) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). Thus, a party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 (1982) (footnote omitted).

When Petitioner was convicted, Arizona defined manslaughter to include: "knowingly or recklessly causing the death of an unborn child at any stage of its development by any physical injury to the mother of such child which would be murder if the death of the mother had occurred."  A.R.S. §13-1103(A)(5) (2004).  Among the evidence adduced at trial was that Petitioner "telephoned Detective Fontes…and told him, 'I don't want [Miss. Cisco] to have the baby…I mean I want the baby dead basically [and] however you need to do that is what I want.'"  (Answer, Exh. H., p. 2).  Later, "Elem reiterated to Fontes that she 'just want[s] to have the baby out of the picture and…if something happens to the [Miss Cisco], it wouldn't be all that bad either.  Fontes replied that 'probably what is going to happen' is that both the baby and [Miss Cisco] would be killed and clarified that [Miss Cisco], 'absolutely…[is] going to[o] you know,' to which Elem responded 'Yeah…That's fine with me.  I mean that's fine with me."  (*Id.* at pp. 2-3).  After discussing further details in person, "Fontes repeated 'The baby and her

is okay[?] and Elem replied, 'Yeah that's fine.'"  (*Id.*. at p.3).

As the state appellate court pointed out, there is no question that Petitioner's agreement with Detective Fontes that he would kill Miss Cisco's unborn child constituted conspiracy to cause the death of that unborn child.  "Unborn" necessarily modifies the word child in this instance.   In Petitioner's case, there can be no confusion that Petitioner's conduct was specifically proscribed the by statute.    Under these circumstances, the state court's decision that Petitioner lacked standing on this issue is neither contrary to, nor an unreasonable application of clearly established federal law. *See Parker,* 417 U.S. at 756; *Flipside,* 455 U.S. at 495. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### 4.  Ground IV

Petitioner claims that her trial counsel was constitutionally ineffective because he: (1) "failed to ask for, and in essence argued against…" a jury instruction on conspiracy to commit second-degree murder, which Petitioner contends is a lesser included offense (Amended Petition, p. 9); (2) failed to request that the trial court instruct the jury that Petitioner was not responsible for foreseeable acts committed by a co-conspirator; and (3) did not inform Petitioner about a plea offer.  (*Id.* at pp. 9, 12).  Petitioner raised these issues in her PCR Petition.

In *Strickland v. Washington*, 466 U.S. 668,687 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. To establish that his trial counsel was ineffective under *Strickland*, a petitioner must show: (1) that his trial counsel's performance was deficient; and (2) that trial counsel's deficient performance prejudiced petitioner's defense. *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998)(*citing Strickland*, 466 U.S. at 688, 694).

To establish deficient performance, Petitioner must show that "counsel made errors so serious...that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-688.

The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz*, 149 F.3d at 932 (*quoting Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Even where trial counsel's performance is deficient, Petitioner must also establish prejudice in order to prevail on her ineffective assistance of counsel claim. To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "The likelihood of a different result must be substantial, not just conceivable." *Harrington,* 562 U.S. __, 131 S.Ct. at 792.   Further, because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland,* 466 U.S. at 697-700.

Additionally, under the AEDPA, the federal court's review of the state court's

decision is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 689-699 (2002). In order to merit habeas relief, therefore, Petitioner must make the additional showing that the state court's ruling rejecting an ineffective assistance of counsel claim constituted an unreasonable application of *Strickland*.   *See* 28 U.S.C. §2254(d)(1); *see also Cullen,* __ U.S. __, 131 S.Ct. at 1403 (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential."); *Harrington,* 562 U.S. at __, 131 S.Ct. at 788 ("Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.").

In Petitioner's case, the trial and appellate courts cited *Stickland* when evaluating the claims of ineffective assistance of counsel.  (*See* Answer, Exh. M, p.3 & Exh. , O, p.3).  The state court, in applying *Strickland,* applied the correct law to the issue. *See Dows v. Wood,* 211 F.3d 480, 484-85 (9th Cir. 2000) (*Strickland* "is considered in this circuit to be 'clearly established Federal law, as determined by the Supreme Court of the United States' for purposes of 28 U.S.C. § 2254(d) review.").

### a. Jury instruction on lesser-included offense

Petitioner argues that defense counsel was ineffective when he failed to request a jury instruction on the lesser-included offense of conspiracy to commit second-degree murder, and "in essence argued against a second degree murder conspiracy jury instruction." (Amended Petition, p. 9).

At trial, the state requested a lesser included instruction on conspiracy to commit second-degree murder:  "I know the Court is going to deny the State's requested instruction on the second-degree murder as well.  I want to make a brief record.  I understand the Court's position under *Evanchyk,* you can't conspire to commit second-degree murder.  However, obviously the State disagrees." (Answer, Exh. E, p. 18).  The court denied the request over the State's objection.  (*Id.* at p. 19).

In denying Petitioner's PCR Petition on this claim, the trial court held that counsel's performance was neither deficient nor prejudicial. The court pointed out it had denied the State's request for the same instruction. (Answer, Exh. M, p. 5). The court also pointed out that the evidence adduced a trial did not support giving the instruction. (*Id.*). Finally, the court found that Petitioner was not prejudiced because she was exposed to the same sentence as that available in a second-degree murder case. (*Id.* at p. 6).

The appellate court affirmed finding that Petitioner "had suffered no prejudice from counsel's action or inaction." (Answer, Exh. O, p.3). The court pointed out that the trial court denied the state's motion for the same instruction Petitioner now claims is warranted. Thus, "[t]here is no indication in the record that the court would have granted the state's motion had Elem's counsel not opposed it or that the court would have given a lesser-included instruction had the request come from defense counsel." (*Id.* at p. 4). The appellate court also agreed with the trial court that "even assuming it were theoretically possible to conspire to commit second-degree murder, there was no factual predication for such an instruction given the evidence in Elem's case." (*Id.*). The court pointed out that in Arizona a party is entitled to a lesser-included offense instruction "'on any theory of the case *reasonably supported by the evidence*.'" (*Id.* (*quoting State v. Shumway,* 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983))(emphasis in added by the appellate court in Petitioner's case). Further, "[a] lesser-included offense instruction must be given if the jury could rationally find that the state failed to prove the distinguishing element of the greater offense." *Id.* The court also pointed out that the distinguishing element between first- and second-degree murder is premeditation. (*Id.*).

The court next addressed the evidence:

> Elem's own recitation of the evidence supports the trial court's ruling. As she concedes, the evidence showed that Elem had asked a friend if the friend knew anyone who would kill the unborn child of her husband's former girlfriend. The friend relayed Elem's request to an undercover police detective, who posed as the would-be killer, and recordings of Elem's conversations with the detective were admitted into evidence. Elem contends that, based on those recorded conversations, the jury could have found that Elem had conspired to have the unborn child killed, but the death

of the mother was "merely a foreseeable result" of the object of the conspiracy.  But Elem's conversations with the detective, as described in her petition for review, show overwhelmingly that, although Elem's initial or even primary goal was to have the unborn child killed, she understood and agreed that that would be achieved by killing the mother.  Hence, no reasonable jury could have found that the state had failed to prove Elem had premeditated the death of the mother.  *See* A.R.S. §13-1101(1) ("'Premeditation' means that the defendant acts with either the intention or the knowledge that he [or she] will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection.").

(*Id.* at p. 5).

Under the AEDPA,

a state court's determination that a claim lacks merit bars federal habeas relief so long as 'fairminded jurists could disagree' on the state court's decision.' *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). Moreover, to grant a habeas petition under § 2254(d)(2), a state court's factual findings must be 'clearly erroneous,' not just merely debatable. *Torres v. Prunty*, 223 F.3d 1103, 1107–08 (9th Cir.2000). These stringent standards 'guard against extreme malfunctions in the state criminal justice systems, not as a substitute for ordinary error correction through appeal.' *Richter*, __ U.S. __, 131 S.Ct. at 786 (internal quotation marks omitted).

*Griffin v. Harrington*, __ F.3d. __  2013 WL 4267105, *4 (9th Cir.  Aug. 16, 2013) (discussing evaluation of *Strickland* claim under the AEDPA).

There can be no dispute that the trial court denied the State's request for the same instruction.  Even the prosecutor, when requesting the instruction, was aware of the court's inclination to deny it.  (*See* Answer, Exh. E, p.18 ("I know the Court is going to deny the State's requested instruction on the second-degree murder….")).   Nothing in the record remotely supports the conclusion that the court would have given the instruction had defense counsel urged it.  Moreover, the evidence cited by the appellate court overwhelmingly supports that court's reasonable conclusion that Petitioner was not entitled to a lesser-included instruction.  Petitioner's argument to the contrary is nothing

1   more than an attempt to retry her case.   The state court ruling on this matter was not

2   contrary to, nor an unreasonable application, of *Strickland.*   Nor did the state court's

3   ruling result in a decision that was based on an unreasonable determination of the facts in

4   light of the evidence presented during the state court proceeding.

5                               **b. *"Anti-Pinkerton" Instruction***

6          Petitioner claims that defense counsel was inefficient by failing to request an

7   instruction informing the jurors that Petitioner was only liable for those crimes she

8   intended and agreed would be committed, and not other foreseeable crimes that her co-

9   conspirator committed on his own in carrying out the conspiracy. (Amended Petition, pp.

10  9, 19).  Petitioner contends that had the jury been instructed that vicarious liability did not

11  attach to her for offenses committed by a co-conspirator "which the Petitioner did not

12  intend to promote or aid in the commission thereof, and agree thereto, the jury would

13  have been focused upon the intent to promote and the agreement rather than the

14  potentialities offered by the undercover officer relating to the mother being killed in the

15  process of killing her unborn child." (Reply, p.35).

16         In denying Petitioner's claim, the trial court stressed that Ms. Cisco's murder was

17  "agreed upon by Petitioner in the conspiracy…." (Answer, Exh. M, pp. 6-7).   The

18  appellate court agreed that defense counsel was not ineffective for failing to request an

19  "anti-*Pinkerton*" instruction:

20         *Pinkerton* involved co-conspirator liability for substantive offenses
21         committed beyond the offense of conspiracy itself by another member of
           the conspiracy.   [*Pinkerton v. United States,* 328 U.S. 640] at 641-
22         47[1946]; *see also State ex rel. Woods,* 173 Ariz.[497] at 500, 844 P.2d
           [1147] at 1150 [(1992)]("Under *Pinkerton*, a conspirator may be held liable
23         for a crime to which the conspirator never agreed, and which is committed
           by a co-conspirator with whom the conspirator never personally dealt, as
24         long as the crime is reasonably foreseeable and is committed in furtherance
25         of the conspiracy.").  In this case, the undercover officer with whom Elem
           conspired committed no offenses in furtherance of the conspiracy.  Thus,
26         any form of "anti-*Pinkerton*" instruction would have been inappropriate
27         and meaningless to the jury….

28

(Answer, Exh. O, p. 6).

> The court instructed the jury that it could only convict petitioner of conspiracy to commit first-degree murder if it found that Petitioner agreed with at least one other person that one of them or another person would engage in certain conduct, and that she made the agreement with the intent to promote or aid the commission of a crime. (Answer, Exh. H, p. 4). The court also instructed the jury that the crime of first-degree murder required, *inter alia,* that Petitioner intended or knew that she would cause the death of another person and she acted with premeditation. (*Id.*). The jury was further instructed that it may determine that Petitioner conspired to commit all or only some of the crimes. (Answer, Exh. E, p. 36). An "anti-*Pinkerton*" instruction would pertain only to culpability for the substantive offenses. The record is clear that Petitioner was not charged with any substantive offenses. On the instant record, the state court's decision that counsel was not constitutionally ineffective for failing to request an "anti-*Pinkerton*" instruction was not contrary to, nor an unreasonable application, of established federal law. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### c. Failure to present plea

Petitioner also claims that defense counsel was ineffective for failing to inform her that the state had made a plea offer. Petitioner contends that had she "known of a plea offer, she likely would have accepted it." (Amended Petition, p. 12).

Petitioner raised this claim in her PCR Petition, arguing that a notation in defense counsel's file indicated that the prosecutor "is not offering much of a plea at this time." (Answer, Exh. L, p. 15). Although defense counsel told Petitioner he was trying to obtain a 10-year maximum plea, he never conveyed to her that the prosecutor had extended a plea offer. (*Id.*). The trial court denied Petitioner's claim as conclusory given that she did not show that a formal plea offer was ever made. (Answer, Exh. M, pp. 7-8).

Affirming the trial court, the appellate court cited the state's brief that no formal plea offer was made. Instead, "the State and defense counsel simply discussed potential pleas, but never came to any agreement regarding an appropriate offer, and therefore no plea was ever drafted." (Answer, Exh. O, p.8). The appellate court agreed with the trial court that Petitioner's claim was merely based on an inference that was refuted by the state's assertion that no plea offer was ever extended. The court went on to state:

> But even assuming some offer had been made, because there is no evidence in the note [in the defense file] or elsewhere in the record of details of an actual, concrete plea offer, she failed to allege sufficient facts that, if true, would have entitled her to relief.

(*Id.*).

"[A]s a general rule, defense counsel has the duty to communicate formal [plea] offers from the prosecution...," *Missouri v. Frye,* __ U.S. __, 132 S.Ct. 1399, 1406 (2012), and failure to do so constitutes unreasonable conduct that meets the first prong of the *Strickland* test. *United States v. Blaylock,* 20 F.3d 1458, 1466 (9th Cir. 1994). The record before the state court is clear that although counsel may have engaged in plea discussions, Petitioner failed to show that the state ever extended a plea offer. Petitioner's claim that counsel failed to inform her of the plea offer is merely conclusory. Consequently, the state court's decision on this issue was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

**III. CONCLUSION**

As set forth above, Petitioner has withdrawn Ground III of her Petition, and that ground will be dismissed. Additionally, federal habeas review is precluded by virtue of Petitioner's procedural default of her Ground I claim that the trial court violated her due process rights when it failed to *sua sponte* instruct the jury that conspiracy to commit manslaughter of an unborn child required proof of an overt act. As to Petitioner's remaining grounds for relief, the state court's decision resolving the issues raised by Petitioner was not contrary to, nor an unreasonable application of, clearly established Federal law. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented. Consequently, Petitioner's remaining claims fail on the merits. Accordingly,

IT IS ORDERED that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 4) is DISMISSED IN PART and DENIED IN PART.

The Amended Petition is dismissed as to:

(1)     that portion of Ground I challenging the trial court's failure to *sua sponte* instruct the jury that conspiracy to commit manslaughter of an unborn child required proof of an overt act, because Petitioner procedurally defaulted such claim; and

(2)     Ground III in light of Petitioner's waiver of that Ground.

The Amended Petition is denied on the merits as to all remaining grounds for relief.

Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that, if Petitioner appeals the denial of her Amended petition for habeas relief, any request for certificate of appealability shall be denied based on the Court's  determination of the claims presented on the merits and that Petitioner has failed to make the requisite substantial showing of a denial of a constitutional right on the grounds presented.  See 28. U.S.C. § 2253(c).

Dated this 27th day of September, 2013.

_____

Frank R. Zapata

Senior United States District Judge